48 CCPA

### Application of Otis J. McCULLOUGH.
### Patent Appeal No. 6684.

United States Court of Customs and Patent Appeals.

May 5, 1961.

---

---

James P. Burns, G. Howard White, Washington, D. C. (Burns, Doane & Benedict, and R. Werlin, Houston, Tex., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (D. Kreider, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals sustaining the examiner's final rejection of claims 1 through 11, 13 through 16 and 18 in application Ser. No. 654,435, filed April 22, 1957, for reissue of Patent 2,750,583, granted June 12, 1956 and entitled "Radioactive Guiding System For Motor Vehicles." No claims are allowed and the appeal is only from the refusal of claims 8, 14, 15, 16 and 18.

The vehicle guidance system disclosed uses a substantially continuous guiding line of radioactive material to determine the path which is to be traveled automatically by the vehicle. A radiation detector positioned on the vehicle senses deviations from the guiding line and provides a control signal which indicates the presence of a deviation by flashing a light or ringing a bell and which, additionally, corrects for the deviation by controlling a servomechanism to automatically steer the vehicle. Automatic vehicle guidance is said to be especially

* United States Senior District Judge for the Eastern District of Pennsylvania designated to. participate *in place of* *Judge O'CONNELL*, pursuant to provisions of Section 294(d), Title 28, U.S.C.

desirable for motor vehicle highway travel and airplane landings, especially under hazardous conditions arising from fog, rain, darkness and other factors which substantially impair visual observation.

Claim 8 is exemplary and reads:

"8. A *radioactive* guide system for mobile vehicles, comprising, the combination with a mobile vehicle having a steering apparatus, of a substantially continuous *radioactive* guide line defining a travel path on a surface traversed by said vehicle, of a *radiation* detector means positioned on said vehicle to move therewith relative to said guide line, said *radiation* detector being constructed and arranged to receive *radioactive radiations* from said guide line in amounts varying in proportion to the variations in the position of said vehicle to said guide line, of a servomechanism controlling said steering apparatus, and means connecting said detector to said servo-mechanism for actuating said servo-mechanism in accordance with the variations in indication received by the detector from said guide line." [Emphasis ours.] [1]

Several modifications are disclosed for application to highway guidance, one using radioactive material in the center line of the highway and another having the radioactive material in a guide line along which the center of the vehicle passes. In either case, however, the application says that a "generally well known radiation detector * * * such as a Geiger-Muller counter, ionization chamber, scintillation counter or the like," located on the vehicle, senses changes in the quantity of radiation received from the guide line. "Conventional electrical circuit[s]" connect the detector output to "visual and audible indicating devices" or "other known signalling arrangements," the detector output also being connected to "a suitable and generally conventional servo-mechanism" for controlling the vehicle's steering system. Since we consider the details of these circuits unimportant, at least insofar as the claims involved are concerned, suffice it to say that the output from the radiation detector is amplified, the amplifier output energizes a relay and the relay in turn actuates a single-pole, double-throw switch which controls the current to a reversible servo-motor. The reversible motor is operatively connected to the steering mechanism of the vehicle to actuate it in response to the received signals to maintain the course of the vehicle.

The references are:

| | | | |
|---|---|---|---|
| Paulus et al. | (1) | 2,317,400 | Apr. 27, 1943 |
| Paulus et al. | (2) | 2,339,291 | Jan. 18, 1944 |
| Hamilton | | 2,520,680 | Aug. 29, 1950 |
| Stern (British) | | 664,192 | Jan. 2, 1952 |

———◆———

Throughout the prosecution of the application involved, the Paulus et al. patents have been considered identical insofar as their broad disclosures and their application to the claims involved is concerned. Therefore, of these two patents we find it necessary to consider only No. 2,317,400, later filed but first to issue. It discloses a vehicle and mobile body guidance system which uses a current-carrying conductor as a "substantially continuous" guiding line. A detector

---

1. This claim differs from claim 8 of the patent only in the addition to the patent claim of the limitation that the guide line is "substantially continuous." On the reexamination incident to the reissue application the Patent Office has reversed its position on patentability of the subject matter of this claim. The patent claim also omitted "radioactive" in the phrase "radioactive radiations" but we do not regard this as a difference of substance.

located on the vehicle and responsive to the magnetic field surrounding the current-carrying conductor has two pick-up coils which detect changes or variations in the magnetic field resulting from deviations by the vehicle from the guide line. Signals from the pick-up coils are applied to a pair of amplifiers connected in a balanced bridge type circuit. In response to the output or unbalance of the bridge circuit a "galvanometer type" sensing device visually indicates the direction of deviation and also operates a servomechanism to steer the automobile.

Hamilton discloses a corn planter which deposits radioactive material each time a seed is planted. When the next row is planted, a detector on the planter senses the radioactive material deposited during the planting of the previous row and so controls the planter that the seeds being planted are evenly spaced, corresponding to the spacing in the adjacent row. While Hamilton apparently prefers a reflecting or fluorescent material which can be detected by a light source, he clearly contemplates depositing in lieu thereof "a radioactive or previously magnetically energized material which then without special excitation * * * would * * * cause operation of the marker dropping and seed dropping mechanisms." Hamilton also mentions other inert substances such as nickel and iron which could "be electrically or magnetically detected." However, no automatic guidance of the tractor which draws the planter is contemplated and, moreover, when the marking is done by substances which are not visually detectable, the operator could not use the markings as an aid in guiding his tractor.

In the British patent to Stern, a plurality of spaced buoys mark the boundaries of marine channels which are to be traveled. Radioactive material within each buoy is shielded so as to emit one or more beams of radiation or, alternatively, a single rotating beam. The ship traversing the paths marked by the buoys has a radiation detector which may indicate quantity as well as direction of radiation, the quantity being inversely proportional to the square of the distance between the buoy and the ship. The patent also says that such a system can be used to provide a "directional aid on land and for aircraft." As in Hamilton, however, no automatic steering is disclosed.

The board reversed the examiner's rejection of the claims as being anticipated by either Stern or Hamilton alone, affirming, however, their rejection as being unpatentable over the Paulus et al. patents in view of either Hamilton or Stern. Paulus et al. was said to disclose a continuous guidance and control system and the secondary references were said to disclose "the use of radioactive material * * * in guiding the position of the land vehicle in Hamilton and a ship in Stern." The board said:

> " * * * it seems to us that a person skilled in this art, and cognizant of the disadvantages of using a continuous current-carrying cable, would be led by the teaching in the Hamilton patent to substitute a line of continuous radioactive material in place of the continuous current-carrying cable of Paulus et al. and use a radioactive responsive means on the vehicle in place of the magnetic responsive means now disclosed by Paulus et al. in order to effectuate the control and steering functions of the Paulus patents. The use and benefits of a continuous guide line is clearly disclosed by Paulus et al. and this would suggest the use of a continuous line of radioactive material when used in connection with either Paulus et al. device."

Appellant contends that the prior art does not suggest a "continuous or substantially continuous radioactive guide means along the travel path" and since the Paulus et al. guidance system re-

quires an energized cable directly below the vehicle and a detector responsive to the magnetic field surrounding the current-carrying conductor, he argues that any combination would require that "the entire circuitry of the Paulus disclosure be revised" so as to be responsive to an unenergized or inert indicating material. Additionally, he points out that the continuous conductor system of the Paulus et al. patents has so many disadvantages that "no practical employment of any suggestions of Paulus et al." is known. As respects Hamilton, he argues that since no guidance of the tractor is disclosed, it is "anything but apparent" that certain admitted defects of the Paulus system can be overcome by using a radioactive guide line. Hamilton, he says, would be totally inoperative if the radioactive material were deposited in a "substantially continuous" line. This deficiency is also said to be present in Stern in that a continuous guide line is not contemplated and, moreover, would constitute an "intolerable navigation hazard."

None of the references alone anticipates the admittedly novel combination. Nevertheless, 35 U.S.C. § 103 precludes patentability when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." As we construe the claims, the Paulus et al. patents show the overall claimed combination with the exception of those limitations which we have italicized in claim 8 as above quoted. Those "differences" are the recitation of "radioactive," "radiation," and "radioactive radiation." Clearly what appellant seeks broadly to patent is the concept of using the radiations from a radioactive material as the standard or intelligence supplying medium in a guidance system instead of the magnetic field pro-

duced in the current-carrying wire of Paulus et al.

Appellant's arguments on patentability are not convincing. Each of the elements in the claimed combination is either well known or conventional. It is unnecessary, we feel, that there be a teaching in the prior art of how, specifically, to "completely revise" the Paulus circuitry. One skilled in the art would be able to devise the radiation detector arrangement, control circuits and servomechanisms, given the idea of using radioactive material as the guide. The sole issue is, therefore, whether it would have been obvious to one having ordinary skill in this art to substitute radiations from a radioactive material for the magnetic field of the current-carrying conductor in the combination disclosed by Paulus et al. Use of radioactive materials for determining position with respect to a fixed marker or indicator is old, in Hamilton with respect to a previously planted seed and in Stern with respect to the direction and distance to the buoys. We are of the opinion that these teachings would suggest to one having ordinary skill in the art the use of radioactive material as the source of guiding intelligence in place of the current-carrying conductor in Paulus. As taught by Hamilton, a radioactive material is but one of the many marking or indicating materials one skilled in the art would know to be useful.

Appellant also argues that in Paulus et al. it is necessary that the vehicle pass directly over the current-carrying conductor while in the claimed combination, using a radioactive guiding line, the vehicle may traverse a path to one side of the guide. This argument ignores the language of the claims which clearly do not distinguish from a guidance system in which the vehicle passes directly over the guiding line, whether that line be of radioactive material or a current-carrying conductor. As we view the claimed

combination, it is also immaterial that both Stern and Hamilton use spaced rather than continuous radioactive indicators. The continuous feature is clearly shown by the Paulus et al. patents.[2] From the other references it would be obvious that radioactive material could be used for guidance.

We find no reversible error in the board's decision which is, therefore, affirmed.

Affirmed.

WORLEY, Chief Judge, sat but did not participate in the decision of this case.

---

2. Moreover, we note that the involved application says:
"The guide line may be continuous or may be interrupted by unmarked intervals which will normally be relatively short particularly if the vehicle is to be driven at relatively high speeds along the defined path."
Spacing would apparently depend upon allowable tolerances of the travel path.